UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR421-111-13 |
| | ) | |
| REGINALD JAVA BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant Reginald Java Brown is charged in this multi-defendant drug conspiracy case with one count of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846, one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Doc. 3 (Indictment). He moves to suppress evidence seized from his house pursuant to a search warrant. Doc. 335. The Government responded in opposition. Doc. 412. The Court held a hearing during which the parties presented a joint stipulation, doc. 525, and the Defendant requested additional time to file a sur-reply in light of that stipulation. Doc. 530 (Minute Entry). The Government requested an

opportunity to respond to the sur-reply, and the parties agreed that an evidentiary hearing would not be necessary. *Id.* The Court directed additional briefing and set a briefing schedule.[1] *Id.* The parties have submitted the directed briefs. Docs. 541 & 543. The motion is ripe for disposition.

I. **BACKGROUND**

Agent David Oldham of the Chatham Savannah Counter Narcotics Team applied for a search warrant for 1912 Quincy Street via affidavit and oral testimony given under oath to Judge Michael Barker of the Magistrate Court of Chatham County. Doc. 335-1 at 7; *see also* doc. 525 at 1. Oldham's affidavit describes several interactions with a confidential informant identified as CRI 14-95. *See* doc. 335-1 at 3-4. However, the parties' stipulation reveals that Oldham informed the issuing magistrate the CRI 14-95 "was, in fact, a series of TIII communications intercepted by agents . . . ." Doc. 525 at 1. Judge Barker issued the search warrant on December 22, 2020, doc. 335-1 at 9-11, and officers executed the search

---

[1] The Court granted defendant's motion to extend the period to submit additional briefing. *See* doc. 540.

warrant that same day. *Id.* at 17. Cocaine and crack cocaine were among the items seized. *Id.*

The defendant moves to suppress "the search of 1912 Quincy Street and any and all evidence derived therefrom," arguing the warrant was not based on probable cause. Doc. 335 at 6; *see also* doc. 541 at 2-4. The government responds that the search warrant was based on probable cause, and, even if actual probable cause did not exist, officers relied on the warrant in good faith. *See generally* doc. 412; *see also* doc. 543 at 1 ("The Government stands on the arguments as laid out in its initial response . . . .").[2]

## II.   ANALYSIS

"Search warrants are presumed to be validly issued." *See United States v. Bushay*, 859 F. Supp. 2d 1335, 1377 (N.D. Ga. 2012) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Where a defendant seeks suppression of evidence seized during a search conducted pursuant to a warrant, the defendant has the burden of establishing that the warrant was defective or executed improperly. *Id.* (citing *United States v. Van*

---

[2] In its initial response, the Government also argued that the Defendant lacked a sufficient privacy interest to challenge the warrant. Doc. 412 at 2-3. However, it has since withdrawn that argument. Doc. 543 at 1.

*Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986); *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981); and *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980)); *see also United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969) (defendant has the burden of proof in challenging the validity of the execution or service of a search warrant).[3]

A search warrant may issue where the affidavit supporting the warrant application establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir.1999). A court must consider the totality of the evidence in determining whether probable cause exists to justify the issuance of a search warrant, and that determination turns on the "assessment of probabilities in particular factual contexts. . . ." *Gates*, 462 U.S. at 232. It is the task of a reviewing court to determine whether the issuing judge had a "substantial basis" for finding probable cause. *Id.* at 238–39. The issuing magistrate's determination is accorded "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also*

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Brundidge*, 170 F.3d at 1352 (discussing "great deference" afforded a lower court judge's determination of probable cause).

As to search warrants for residences, "[t]here need not be an allegation that the illegal activity occurred at the location," *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009), but the supporting affidavit "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Mitchell*, 503 F. App'x 751, 754 (11th Cir. 2013) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)). "[T]he affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.' " *Kapordelis*, 569 F.3d at 1310 (quoting *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999)). The burden of establishing a link between the defendant's residence and alleged criminal activity is low because, as the *Kapordelis* court explained, "few places are more convenient than one's residence for use in planning and hiding fruits of a crime." *Id.* (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981)); *see also United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (holding evidence of

5

defendant possessing contraband of type normally expected to be hidden in residence will support search).

The affidavit at issue supports a finding of probable cause to search Brown's house at 1912 Quincy Street. It links Brown and the residence, explaining that Oldham was "familiar with the address of 1912 Quincy Street" and knew it to be associated with Brown. Doc. 335-1 at 3. He also explained that a vehicle Brown was observed driving, a blue Lexus, was registered to the residence at 1912 Quincy Street. *Id.* The residence and Brown are sufficiently connected. *Cf. Mitchell*, 503 F. App'x at 754.

The affidavit also sufficiently links the residence with Brown's suspected criminal activity. It details suspected drug buys between Brown and his co-defendant Aubrey Williams. Doc. 335-1 at 3-4. On July 29, 2020, officers saw Brown enter Williams' car, sit in the rear passenger seat behind Williams, and moments later exit the car and return to the Lexus registered to the Quincy Street address. *Id.* at 3. On November 29, 2020, officers observed Williams conducting a suspected resupply of cocaine. *Id.* Officers were alerted to the suspected resupply by "a confidential and reliable informant," CRI 14-95, observed the resupply meeting take place, and then received confirmation from CRI 14-95 that

6

the resupply had in fact occurred. *Id.* They then tracked Williams' car to the area of 1912 Quincy Street. *Id.* On December 2, 2020, officers witnessed Brown "exiting from Williams' silver Pilot with a white in color package that [Brown] placed under his front passenger seat." *Id.* at 3-4. On December 13, 2020, agents surveilled Williams' truck "at/near" 1912 Quincy Street, after learning from CRI 14-95 (*i.e.*, the wiretap, *see* doc. 525 at 1) that Williams and Brown planned to meet. *Id.*

Brown argues that, because the affidavit does not appear to describe any actual transactions occurring at 1912 Quincy Street, it fails to establish probable cause. *See* doc. 541 at 3-4. However, that is not the inquiry. Instead, it is whether the issuing magistrate had a "reasonable basis for concluding that Defendant might keep evidence of his crimes at his home." *Kapordelis*, 569 F.3d at 1310. The suspected drug transactions discussed above, including some directly connected to the area around 1912 Quincy Street, supply the sufficient reasonable basis.[4]

---

[4] Brown makes a passing suggestion that, although officers might have surveilled Williams at or near 1912 Quincy Street during a resupply, the warrant was not issued until eight days later, perhaps rendering the information stale. Doc. 541 at 5. In determining whether information is stale, courts must consider the nature of the suspected crime, and "distinguish between criminal activity that is 'protracted and continuous' and criminal activity that is 'isolated.'" *United States v. Schimmel*, 317 F. App'x 906, 909 (11th Cir. 2009) (citing *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000)). "Protracted and continuous activity is inherent in large-scale

Additionally, the affidavit includes information about the affiant's experience investigating drug trafficking, *see* doc. 335-1 at 5-6, and his observation that, based on the information gleaned during his investigation and detailed in the affidavit, Brown "is a member of the narcotics conspiracy, who communicates by phone with Williams, and who Williams supplies with narcotics to distribute on a frequent basis." *Id.* at 4-5. Oldham also averred that, based on his experience, "drug dealers routinely keep in their residences evidence of their drug dealing activities . . . ." *Id.* at 5. The opinions and conclusions of the affiant about what he—based on his experience as a law enforcement agent—believed, were appropriate for the issuing judge to consider when making the probable cause determination. *United States v. Robinson*, 62 F.3d 1325, 1331 at n.9 (11th Cir. 1995) (citing *United States v. Motz*, 936 F.2d 1021, 1024 (9th Cir. 1991)). The "totality of the circumstances" presented in

---

drug trafficking operations." *United States v. Bascaro*, 742 F.2d 1335, 1346 (11th Cir. 1984), *abrogated on other grounds by United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007). This ongoing conduct renders the passage of time less significant. *Schimmel*, 317 F. App'x at 909 (quoting *Bervaldi*, 226 F.3d at 1265). Because the facts in the affidavit suggest an ongoing drug operation, including continuous suspected resupply meetings, the information in the affidavit was not stale. *See Schimmel*, 317 F. App'x at 909.

the affidavit indicated that there was a fair probability of discovering contraband at Brown's house. *See Anton*, 546 F.3d at 1358.

Even if the defendant could carry his burden to show the warrant issued without probable cause, the government's argument pursuant to *Leon*, 468 U.S. at 913, would carry the day. *See* doc. 412 at 9-12. In *Leon*, the Supreme Court held that officers' objectively reasonable reliance on a warrant removed any practical justification for applying the exclusionary rule. *See* 468 U.S. at 921 (excluding evidence because the executing officer reasonably relied on the issuing magistrate's probable cause determination, "cannot logically contribute to the deterrence of Fourth Amendment violations."). Given that exception, "searches conducted pursuant to warrants will rarely require suppression." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990). *Leon* identified four situations where suppression would remain appropriate: (1) where the officer misled the issuing magistrate by intentionally or recklessly including false information in the affidavit, (2) "where the issuing magistrate wholly abandoned his judicial role" by failing to act neutrally, (3) where the "affidavit so lack[s] ... indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) where the

warrant issued is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." 486 U.S. at 923.

There does not appear to be any suggestion that Officer Oldham intentionally or recklessly misled the magistrate, or that the magistrate "wholly abandoned his judicial role." 486 U.S. at 923. Considering the analysis of probable cause above, the affidavit cannot be said to be so lacking in probable cause "as to render official belief in its existence entirely unreasonable," and there is nothing identified that makes the warrant "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* The government has met its burden of demonstrating the applicability of *Leon*. *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

## III.   CONCLUSION

Brown's Motion to Suppress should be **DENIED**. Doc. 335. This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and

Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 19th day of July, 2022.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia